1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, <br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ALTOS, <br> Defendant. | Case No.   20-cv-00294-EJD <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO VACATE ORDER DISMISSING ACTION AS MOOT** <br><br> Re: ECF No. 85 |

This Federal Communications Act of 1934 ("FCA") suit and a related case were dismissed as moot on August 22, 2022.  *See* Order Dismissing Action as Moot ("Mootness Order"), ECF No. 76.  Now pending before the Court is Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility's ("AT&T") Motion to Vacate August 22, 2022 Order (the "Motion") pursuant to Federal Rule of Civil Procedure 60.  *See* Mot., ECF No. 85.  The Court finds AT&T's Motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and DENIES the Motion for the reasons below.

**I.     BACKGROUND**

AT&T is a wireless telecommunications carrier that provides personal wireless services to customers.  *See* Compl. ¶ 9, ECF No. 1.  In March 2019, AT&T submitted 12 applications to Defendant City of Los Altos (the "City") for permits to install "small cell" wireless facilities, which are small antennas and related equipment installed on existing or replacement utility poles.  *See* Mootness Order 3; Compl. ¶ 1.  Residents of the City opposed AT&T's proposed sites, and the City Council subsequently conducted several public hearings and adopted an ordinance (the

United States District Court
Northern District of California

1    "2019 Ordinance") which applied retroactively to all pending applications and under which the

2    City denied AT&T's applications and appeals.  *See* Mootness Order 3.

3         On January 13, 2020, AT&T sued the City on the ground that the City's denials of its

4    applications violated the FCA, as amended by the Telecommunications Act of 1996.  *See* Compl.

5    On June 30, 2022, the City repealed the 2019 Ordinance and adopted a new, comprehensive

6    ordinance (the "2022 Ordinance") governing the placement of all wireless facilities in the City.

7    *See* Mootness Order 4.  On July 5, 2022, the City submitted a motion for administrative relief to

8    file briefing on the issue of whether its adoption of the 2022 Ordinance mooted AT&T's claim.

9    *See* Admin. Mot., ECF No. 67.  The Court permitted such briefing, and, on August 22, 2022,

10   issued the Mootness Order, which dismissed AT&T's action as moot and terminated its then-

11   pending motion for summary judgment.[1]  *See* Mootness Order.  AT&T appealed the Mootness

12   Order on September 16, 2022.  *See* Not. Appeal, ECF No. 78.

13        In May 2023, AT&T submitted new application for permits, in accordance with the City's

14   2022 regulations, for 11 of the locations for which it had been denied permits under the 2019

15   Ordinance.  *See* Decl. of Marc Grabisch in Supp. of Mot. Vacate ("Grabisch Decl.") ¶ 7, ECF No.

16   85-1.  AT&T "decided not to file a new application for the twelfth location that was at issue" in

17   this action, and "does not plan to file an application for this location at this time."  *Id.* ¶ 9.  AT&T

18   states that should it seek to install a facility at this location in the future, it will not seek to do so

19   based on the assertion that either the City's 2019 denials or the 2019 Ordinance was improper.

20   *See* Mot. 3 n.1.  The City granted the 11 new applications in December 2023.  *See id.* ¶ 10.

21        On February 5, 2024, AT&T voluntarily dismissed its appeal of the Mootness Order.  *See*

22   Order Dismissing Appeal, ECF No. 84.  AT&T then filed the instant Motion on February 16,

23   2024.  The City filed an opposition, and AT&T filed a reply.  *See* Opp'n, ECF No. 86; Reply, ECF

24   No. 87.  The Court took the Motion under submission on April 9, 2024.  *See* ECF No. 88.

25

26   _____

[1] This action was related to a similar suit brought against the City by GTE Mobilnet of California
27   Limited Partnership d/b/a Verizon Wireless ("Verizon"), and the Mootness Order also dismissed
     Verizon's suit as moot and terminated Verizon's pending summary judgment motion.  *See*
28   *generally* Mootness Order.

Case No.: 20-cv-00294-EJD
ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT

2

1

## II.    LEGAL STANDARD

A district court may consider a request for vacatur of a final judgment or order pursuant to

Federal Rule of Civil Procedure 60(b).  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*

("*Bonner Mall*"), 513 U.S. 18, 29 (1994).  Federal Rule of Civil Procedure 60(b) provides that a

party may move a court to relieve it from a final judgment, order, or proceeding under six

circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could
> not have been discovered in time to move for a new trial under Rule
> 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based
> on an earlier judgment that has been reversed or vacated; or applying
> it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  The "catchall" circumstance of Rule 60(b)(6) "is available only when Rules

60(b)(1) through (b)(5) are inapplicable."  *Kemp v. United States*, 596 U.S. 528, 533 (2022) (citing

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).

The Ninth Circuit has noted that "Rule 60 provides the basis for a district courts' vacation

of judgments when the equities so demand, but it does not establish what substantive standards

should be employed."  *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir.

1998).  Vacatur should be granted when an action becomes moot due to either happenstance—*i.e.*,

"circumstances unattributable to any of the parties"—or the "unilateral action" of the prevailing

party.  *Davis, Cowell & Bowe, LLP v. Soc. Sec. Admin.*, 281 F. Supp. 2d 1154, 1155 (N.D. Cal.

2003) (citing *Bonner Mall*, 513 U.S. at 23).  When mootness results from settlement, however,

district courts may review vacatur requests under Rule 60(b)(5)–(6) using a balancing-of-the-

equities standard, while appellate courts must generally, though not always, find "exceptional

circumstances" before vacating a judgment under review.  *See Am. Games*, 142 F.3d at 1167–68;

*see also, e.g.*, *Ayotte v. Am. Econ. Ins. Co.*, 578 F. App'x 657, 658 (9th Cir. 2014) ("[T]he *Bonner

Mall* rule requiring 'exceptional circumstances' for vacatur applies only to appellate courts . . .

Case No.: 20-cv-00294-EJD
ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT

[and thus] *Bonner Mall* did not overrule this court's 'established procedure' of remanding a vacatur request so that the district court can apply an 'equitable balancing test.'") (quoting *Am. Games*, 142 F.3d at 1168).  That is, "district courts enjoy 'greater equitable discretion when reviewing [their] own judgments than do appellate courts operating at a distance.'" *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-cv-01858, 2021 WL 3373292, at *1 (N.D. Cal. Aug. 3, 2021) (quoting *Am. Games*, 142 F.3d at 1169–70).  "The burden rests with the party seeking relief to demonstrate equitable entitlement to vacatur." *Toutov v. Curative Labs Inc.*, No. 20-cv-11284, 2024 WL 1351391, at *2 (C.D. Cal. Mar. 28, 2024) (citing *Bonner Mall*, 513 U.S. at 27).

The equitable balancing test requires district courts to consider factors "includ[ing], but . . . not limited to 'the consequences and attendant hardships of dismissal or refusal to dismiss,' the 'competing values of finality of judgment and right to relitigation of unreviewed disputes,' the 'motives of the party whose voluntary action mooted the case,' and the public policy against allowing a losing party to 'buy an eraser for the public record.'" *Ayotte*, 578 F. App'x at 658–59 (quoting *Am. Games*, 142 F.3d at 1168, 1170).  In considering the motives of the party whose voluntary action mooted the case, "the equitable principles weighing in favor of vacatur in these situations cut [against vacatur] where the appellant by his own act prevents appellate review of the adverse judgment." *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995).  Nonetheless, "if the district court determines that the appellant did not intend to avoid appellate review and to have the district court's order vacated, that factor may weigh equitably in favor of vacating the order." *Am. Games*, 142 F.3d at 1168 (quoting *Dilley*, 64 F.3d at 1372 n.6).

## III.    DISCUSSION

AT&T argues that the Court should vacate the Mootness Order based on a balancing of the equities.  *See* Mot. 3–7.  The City argues that the "exceptional circumstances" standard applies, and that AT&T does not meet the requirements for vacatur under either standard.  *See* Opp'n 5–9.  As described above, *see supra*, at Part II, the "exceptional circumstances" standard applies to appellate courts, while district courts use the equitable balancing test in evaluating motions to vacate under Rule 60(b)(5) or (b)(6)—regardless of whether the request for vacatur appears by

Case No.: 20-cv-00294-EJD
ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT

motion from a party or remand from an appellate court.  *See, e.g.*, *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 20-cv-06469, 2023 WL 2560100, at *1 (N.D. Cal. Feb. 6, 2023) (applying balancing test to unopposed motion for vacatur under Rule 60(b)(6) where parties settled action while appeal was pending); *Toutov*, 2024 WL 1351391, at *1–2 (applying balancing test to motion to vacate jury verdict following parties' settlement); *BrightEdge Techs., Inc. v. Searchmetrics, GmbH*, 14-cv-01009, 2019 WL 1369915, at *2 (N.D. Cal. Mar. 26, 2019) (reviewing both exceptional circumstances and equitable considerations following remand from appellate court).  Accordingly, the Court will apply the equitable balancing test in evaluating AT&T's Motion.

### A.    Consequences and Attendant Hardships

AT&T argues that the Mootness Order, if "allowed to stand with full persuasive force . . . could have significant ramifications for AT&T and other wireless service providers who require permits to construct their wireless networks" because other municipalities may "evade prompt judicial review of their own improper permit denials by issuing new ordinances to moot otherwise legitimate judicial claims." Mot. 4.  AT&T further argues that vacatur "would not impose hardship on the City" because the City, unlike AT&T, is not confronting further similar litigation. *See id.*  The City counters that AT&T's argument is "unsupported and speculative," and that the Mootness Order "was based on a straightforward application of well-established Ninth Circuit law calling for the dismissal of moot claims." Opp'n 8

At the outset, the Court notes that "[j]udicial precedents . . . are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Bonner Mall*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).  The Court accordingly does not weigh AT&T's purported hardships against those of the City, but rather against the convention of the American legal system that an appeal is the ordinary process to challenge or erase a potentially unfavorable decision.  *See Bonner Mall*, 513 U.S. at 25 ("Where mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes

Case No.: 20-cv-00294-EJD
ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT

United States District Court
Northern District of California

of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur.").

Turning to AT&T's substantive arguments, the Court finds that AT&T has not sufficiently shown an attendant hardship as a consequence of the Mootness Order.  AT&T suggests in essence that the Mootness Order might incentivize municipalities to delay issuance of permits by first improperly denying permits and then issuing new ordinances that moot any resulting suits.  The Court agrees with the City that this suggestion is too speculative; further, it contravenes the presumption that governments act in good faith when they voluntarily cease challenged conduct. *See* Mootness Order 5 (citing *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)).  Lastly, to the extent that AT&T is concerned about the effect of an order it believes was wrongly decided under the applicable law, the Court "has full confidence that future courts can review the disputed order and consider its . . . effect in light of" the relevant authority. *BrightEdge Techs.*, 2019 WL 1369915, at *2.

The Court thus finds that AT&T has not shown this factor to weigh in favor of vacatur.

**B.      Finality of Judgment and Right to Relitigate Unreviewed Disputes**

AT&T argues that the finality of judgment factor weighs "heavily in favor of vacatur" because (1) vacatur of the Mootness Order would not disturb the finality of the City's grant of the 11 permits for which AT&T applied under the 2022 Ordinance; (2) it would be appropriate for AT&T to relitigate the unreviewed mootness issues in the Mootness Order; and (3) refusal to vacate the Mootness Order may result in litigants "unfairly us[ing] it to argue in favor of dismissal of other litigation, in which courts will be asked to consider the specific facts of other subject regulations."  Mot. 5–6.  The City counters that AT&T's concern about future misuse of the Mootness Order "is both misplaced, in light of the abundance of Ninth Circuit authority supporting it, as well as an improper attempt to relitigate the merits of the underlying ruling." Opp'n 9.  The City also argues that AT&T's request for vacatur is not justified because it "voluntarily decided to pursue approval of its wireless applications rather than to prosecute its appeal."  *Id.* at 7.  AT&T responds by arguing that it faced a choice between "fulfill[ing] its business mission or continu[ing] to challenge what it viewed as an unfortunate ruling," and that

United States District Court
Northern District of California

1    the "ministerial act of dismissing an appeal after the requested relief had been obtained is hardly

2    the kind of 'voluntary' action that should transform the equities of this case."  Reply 5.

3            Here, AT&T has conceded that it does not seek to relitigate the dispute underlying this

4    case, *i.e.*, the permit denials under the 2019 Ordinance.  *See* Mot. 3; Grabisch Decl. ¶ 9.  Further,

5    the dispute remained unreviewed due to AT&T's own decision to voluntarily dismiss its appeal of

6    the Mootness Order due to a strategic business decision.  Under these circumstances, the Court is

7    not persuaded that this factor weighs in favor of vacatur.

8            **C.      Motives of the Parties**

9            AT&T argues that its voluntary dismissal of its appeal was not a ploy to avoid appellate

10   review, and in fact "brings with it the unwelcome effect of hampering it from challenging a

11   precedent with a substantial negative impact on its business."  Mot. 6.  The City argues that the

12   voluntary dismissal "alone requires denial" of the Motion.  Opp'n 7 (citations omitted).

13           The Court does not make a finding that AT&T engaged in gamesmanship by dismissing its

14   appeal and seeking to vacate the Mootness Order 11 days later.  Likewise, as discussed in the

15   Mootness Order, the Court presumes that the City acted in good faith in promulgating the 2022

16   Ordinance and subsequently requesting that the Court dismiss AT&T's suit as moot.  However,

17   the unavoidable fact is that AT&T "by [its] own act prevent[ed] appellate review of the adverse

18   judgment."  *Dilley*, 64 F.3d at 1370.  The Court thus finds this factor to at best neutral for AT&T.

19           **D.      Public Policy**

20           AT&T argues that vacatur would be consistent with public policy because it incentivizes

21   parties to reach out-of-court resolutions, which conserve judicial and party resources.  *See* Mot. 6–

22   7.  AT&T additionally notes that the resolution here—the grant of the 11 permits—will "facilitate

23   improved wireless services in Los Altos, including in-building service coverage for people who

24   rely on cellular service for both routine and emergency calls."  *Id.* at 7 (citing Grabisch Decl. ¶¶

25   11–17).  The City argues that the Court should "consider the 'public policy against allowing a

26   losing party to . . . erase[] the public record.'"  Opp'n 7 (quoting *Am. Games*, 142 F.3d at 1170).

27           In considering the settlement incentives of vacatur, the Court is persuaded by the reasoning

28   Case No.: 20-cv-00294-EJD
     ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT

United States District Court
Northern District of California

of other courts that vacatur of potentially unfavorable decisions may in fact have the effect of delaying settlement negotiations. That is, if a party believes that it could receive an unfavorable decision and then settle and have the decision vacated, there is less incentive to settle early, before the expenditure of significant party and court resources. *See, e.g.*, *Gardner v. CafePress Inc.*, No. 13-cv-1108, 2015 WL 13427727, at *3 (S.D. Cal. Jan. 9, 2015) ("As an institutional litigant likely facing future copyright cases, settlement-contingent vacatur would eliminate CafePress's incentive to settle early and avoid potentially unfavorable orders.") (citations omitted); *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651, 2006 WL 3741946, at *6 (N.D. Cal. Dec. 19, 2006) ("[T]here is a strong policy reason which militates against allowing a party to hedge its bet by seeking a claim construction ruling from a court and then, if unhappy with that ruling, obtaining a vacatur by extending a covenant not to sue."). Without diminishing the value of the services provided by AT&T, the Court finds that it has not shown that public policy favors vacatur.

### E. Balancing Analysis

The Court has found that the motive factor is neutral, and that AT&T has not met its burden of showing that the other factors favor vacatur. *See supra*, at Parts III(A)–(D). Accordingly, the Court finds that AT&T has not made the requisite showing under the equitable balancing test for vacatur of the Mootness Order.

## IV. CONCLUSION

For the foregoing reasons, AT&T's Motion to Vacate the Mootness Order is DENIED. The Clerk shall close this file.

IT IS SO ORDERED.

Dated: June 6, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-00294-EJD
ORDER DENYING PLTF.'S MOT. VACATE ORDER DISMISSING ACTION AS MOOT
8